United States Courts
Southern District of Texas
FILED
*December 08, 2023*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:22-cr-442(1) |
| § | |
| RANDY KELLY § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Britni Cooper, Assistant United States Attorney, and the defendant, Randy Kelly ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count Six of the indictment. Count Six of the indictment charges Defendant with **Possession with Intent to Distribute a Quantity of Five-Hundred (500) grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine**, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** minimum penalty for each violation of Title 21, United States Code, Section 846 and 841(b)(1)(A), is imprisonment of not less than 10 years and a **statutory** maximum

penalty of up to Life imprisonment, and a fine of not more than $10,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 5 years. *See* Title 18, United States Code, sections 3559(a)(2) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for **up to 5** years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(2) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he/she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph _____ of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to drug trafficking activity. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

3

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-

barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

5

## The United States' Agreements

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Six of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count Six of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

During a narcotics investigation involving Randy Kelly, surveillance was established on Randy Kelly's residence and storage shed, as well as a court authorized wire intercept established on his phone.

On April 29, 2021, law enforcement intercepted a series of calls through a court authorized

8

wire intercept between Aaron Araujo and **Randy Kelly** regarding prior narcotics transactions and a narcotics transaction to take place that day. Based on the information received on the wire intercept, law enforcement began conducting surveillance at 810 Forest Star, Houston, the home of Aaron Araujo.

At approximately 1:45pm, officers saw Defendant Christopher Pitre arrive at the house. Defendant Araujo and Defendant Pitre were observed talking outside the house and eventually got into Defendant Pitre's car and drove off.

At approximately 3:33pm, the vehicle stopped at an apartment complex on North Sam Houston Parkway. Defendant Pitre was observed exiting the vehicle, went to an apartment, and returned to the vehicle and drove to a mechanic shop on Kowis. At approximately 3:50pm, officers received information that Randy Kelly was in the area of Kowis and surveillance was also being conducted on Randy Kelly.

At approx. 3:37pm, Kelly called Araujo and they discussed where to meet.

At approximately 4:00pm, Defendant Pitre's vehicle left Kowis and was followed to the Shell station where it parked near Randy Kelly's truck. Defendant Pitre was observed getting out and going inside the station. Defendant Araujo was observed exiting the vehicle and getting into the passenger side of Randy Kelly's truck. While inside the truck, officers saw movement that appeared to be an exchange between Kelly and Araujo. Araujo then got out of the truck and walked back to his vehicle and got in. Officers saw what appeared to be a bulge in the shorts pocket of Defendant Araujo when he left the truck. Kelly drove off. Defendant Pitre returned to his vehicle and drove off.

At approx. 6:00pm, a call was intercepted from Kelly to Araujo. Kelly said "my friend

9

from out of town called" and asked "you got ten of 'em?" Araujo said "let me get some more, cause I don't have all complete ten of them, but I can get them." Kelly asked for a discount on them so he could make some money. Araujo said that he didn't even get a discount. Based on experience and prior surveillance of Randy Kelly, law enforcement interpreted this conversation to be a discussion regarding a drug transaction to take place, involving ten kilograms.

At approx. 6:35pm, Araujo called Kelly and told Kelly he was waiting for a call back. Kelly asked if they were going to be wrapped "like they have been" and Araujo said yes.

Defendant's Pitre's vehicle was followed to a house on Hawthorn Park Ct where Defendant Pitre lived. Defendant Pitre and Defendant Araujo got out of the vehicle and got into a Dodge Ram pickup.

Defendant Araujo and Defendant Pitre were followed as they made several stops at auto parts stores. Eventually, they were followed to apartments on Bellerive Dr. The pickup parked near a U-Haul truck in the parking lot. An unknown Hispanic male approached the pickup carrying a black plastic trash bag. The male placed the trash bag in the passenger side where Defendant Araujo was sitting. The male then walked into the apartment complex and the pickup left. Surveillance followed the pickup with Defendant Pitre driving and Defendant Araujo the passenger. The pickup was followed as it returned to Defendant Pitre's house on Hawthorn Park Ct.

At approx. 8:44pm, Kelly called Araujo. Araujo said that "they are gonna drop them off to you" and that "Chris is on his way to go drop them off."

The pickup stayed at the house for a short while and at approx. 8:48pm, drove off from the house. Officers contacted a DPS trooper to conduct a traffic stop.

At approx. 8:53pm, the trooper stopped the truck for an expired registration. Defendant Pitre was driving and Defendant Araujo was the front passenger. The trooper could see the garbage bag on the front passenger side floor. When asked, Araujo said it contained clothing. After questioning, Defendant Pitre did not give consent to search the truck. A law enforcement K-9 made the scene and the dog alerted to the truck. Officers searched the truck, recovered the garbage bag, and found that it contained eleven bricks of methamphetamine. Officers also recovered $5,919 in cash from a back seat passenger, who told officers that Defendant Araujo handed him the cash when the trooper stopped them.

At approx. 8:57pm, Araujo called Mando. Araujo told Mando that the police just stopped us and that "we have a ton of stuff." Araujo said it was by where they go with the old man, by Breen and 249.

On April 30, at approx. 12:42pm, Kelly called Araujo and left a message "Cartoon call me."

The drugs were submitted to the HSI lab which found that it was **10.8 kg** of 100% methamphetamine.

At trial, the United States would present evidence of the wire intercept calls between Aaron Araujo and Randy Kelly, along with testimony of Agents and officers who conducted surveillance and conducted the traffic stop. The lab analyst who tested the methamphetamine would also testify about the results of the analysis.

### Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

20. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $_____$ from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount [or, if not agreed, that the Court will determine the proper amount of a money judgment];

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

21. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

22. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees

to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

23. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

DELIBERATELY LEFT BLANK

DELIBERATELY LEFT BLANK

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __12/8__, 2023.

_____
Defendant

Subscribed and sworn to before me on __December 8__, 2023.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____
Assistant United States Attorney
Southern District of Texas

_____
Attorney for Defendant

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:22-cr-442(1) |
| RANDY KELLY, Defendant. | § § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his/her rights with respect to the pending indictment/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          12/8/23
Attorney for Defendant                 Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment/information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea

16

agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

*Randy Kelly*           12-8-23
Defendant                             Date